


FILED

May 28 2025, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Monty Dale Maze,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

May 28, 2025

Court of Appeals Case No.
24A-CR-2596

Appeal from the Sullivan Superior Court

The Honorable Hugh R. Hunt, Judge

Trial Court Cause No.
77D01-2407-CM-333

---

**Opinion by Judge Foley**
Judges Mathias and Felix concur.

**Foley, Judge.**

[1] Monty Dale Maze ("Maze") appeals his conviction of Class B misdemeanor harboring a non-immunized dog.[1] We address the dispositive issue of whether the conviction must be reversed because—as the State agrees—the trial court failed to conduct a proper indigency hearing when denying Maze's request to appoint him trial counsel. We reverse and remand for further proceedings.[2]

## Facts and Procedural History

[2] On July 8, 2024, the State charged Maze with Class B misdemeanor harboring a non-immunized dog, alleging the dog bit and caused bodily injury to a child. The trial court held an initial hearing on July 23, 2024, which related to both the instant cause and a separate criminal cause. The trial court advised Maze of his constitutional rights. The court then engaged in the following colloquy:

> THE COURT:     Do you wish to speak to [c]ounsel about this?
>
> [MAZE]:     Yes.
>
> THE COURT:     You're going to hire your own?
>
> [MAZE]:     No.

---

[1] Ind. Code § 35-46-3-1.

[2] In light of our disposition, we do not address Maze's other arguments.

| | |
|---|---|
| THE COURT: | Are you working or -- I mean, are you asking that I appoint one for you? |
| [MAZE]: | Sure. |
| THE COURT: | Well, are you currently working? |
| [MAZE]: | No. |
| THE COURT: | Part time, anything? |
| [MAZE]: | No. |
| THE COURT: | So how do you provide for yourself? |
| [MAZE]: | I've just had money saved -- |
| THE COURT: | How much do you have saved? |
| [MAZE]: | I only have about [$]3,000[.00] right now. |
| THE COURT: | [$]3,000[.00]? |
| [MAZE]: | Yeah. |
| THE COURT: | I think that'd be enough to hire somebody. |
| [MAZE]: | Not with my expenses, no. |

Tr. Vol. 2 pp. 5–6.  At that point, Maze indicated he needed the savings to pay his bills, mentioning that he had a son to support.  Without further inquiry into

Maze's expenses or overall financial picture, the trial court focused on Maze's savings balance in declining Maze's request for appointed counsel, stating: "Well, $3,000[.00?] I'm not going to find that you're eligible." *Id.* at 6.

[3] At a subsequent status hearing on August 6, 2024, Maze reported that his savings had decreased to $2,000.00 and reiterated that he could not afford to hire counsel. The trial court declined to appoint counsel, telling Maze: "[I]f you've got [$]2,000[.00], you can use it to hire somebody. And if you don't want to, that's fine. But I'm not going to provide you [an attorney]." *Id.* at 11.

[4] A bench trial was held on October 2, 2024, where Maze appeared without counsel. Ahead of the presentation of evidence, the trial court made a record regarding its decision not to appoint counsel. At one point, the court addressed Maze and said: "I kind of took from you, you just didn't want to use that [saved] money." *Id.* at 18. Maze responded: "Because that's what we had to live off of, me and my son." *Id.* at 19. Before long, the bench trial began. After the State presented its case, the court asked Maze if he "ha[d] any evidence to offer up to the [c]ourt in [his] defense that maybe th[e] dog was immunized, th[e] dog in question[.]" *Id.* at 40. Maze said: "What is immunized?" *Id.* After the trial court specifically referred to rabies, Maze said: "[A]s far as having rabies shots, no. But as far as living in town and away from anything that would inflict rabies upon him, you know, he's in a good environment." *Id.* at 40–41. The trial court asked whether Maze was "basically saying that, you know, [he] was aware [the dog] was not immunized for rabies at that time[.]" *Id.* at 41. Maze agreed. The court then said: "So, in essence, you're admitting

guilt, then, you understand, by that statement?" *Id.* Maze said: "Well, I'm also stating, [the dog is] not in an environment where he would have rabies." *Id.*

The court found Maze guilty and imposed 180 days in jail with 174 days suspended to probation. The court also set a fine of $25 and ordered Maze to pay court costs, noting that a total of $214.00 would be "due and payable during the term of [Maze's] probation." *Id.* at 49. The court further ordered that Maze surrender the dog, which would be euthanized. As to euthanasia, the court remarked: "If that dog hurts somebody else, it's on me, as much as it is you. And people are going to look to me, why didn't you protect me Judge?" *Id.* at 50. Maze said: "That's kind of what I'm saying, too." *Id.* The court inquired of Maze's financial situation, with Maze stating he was "broke now" and unable to pay utility bills. *Id.* at 51. The trial court asked how Maze was eating, and he said: "[J]ust food pantry and stuff." *Id.* At that point, the court found Maze indigent and appointed appellate counsel. Maze now appeals.

## Discussion and Decision

Maze argues the trial court erred by denying him appointed counsel without conducting a proper indigency hearing. The State agrees that we "should reverse Maze's conviction and remand the case for further proceedings," pointing out that "[a]lthough the court knew that Maze had some money in savings and could work, it did not inquire into his expenses or other assets, and therefore did not consider his total financial situation[.]" Appellee's Br. p. 10.

[7] An indigent criminal defendant is entitled to the appointment of counsel under the Sixth and the Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Indiana Constitution. *E.g.*, *Reese v. State*, 953 N.E.2d 1207, 1210 (Ind. Ct. App. 2011). Indiana Code section 35-33-7-6(a) safeguards this right, providing as follows: "Prior to the completion of the initial hearing, the judicial officer shall determine whether a person who requests assigned counsel is indigent under section 6.5 of this chapter. If the person is found to be indigent, the judicial officer shall assign counsel to the person." At one point, "appellate caselaw governed Indiana's standards for indigency determinations, albeit somewhat inconsistently." *Spells v. State*, 225 N.E.3d 767, 778 (Ind. 2024). However, "[i]n 2020, the General Assembly enacted a new statute governing indigency determinations," *id.*, providing: "In determining whether a person is indigent, the court shall consider . . . [t]he person's assets," "[t]he person's income," and "[t]he person's necessary expenses," Ind. Code § 35-33-7-6.5. Pursuant to the statutory framework, it is possible for the court to conclude a person is eligible for appointed counsel, but "able to pay part of the cost of representation by the assigned counsel[.]" I.C. § 35-33-7-6(c); *cf.* I.C. § 35-33-7-6.5(e) (specifying that, when it comes to imposing fines, fees, and court costs, the court "may prorate" the amount owed and "require the person to pay an amount that the person can reasonably afford"). Notably, the trial court "may issue an initial indigency determination pending receipt of documentary or other evidence from the person concerning the person's income, assets, expenses, or welfare eligibility." I.C. § 35-33-7-6.5(c). Moreover, Indiana Code section 35-33-7-6(g) allows a court to revisit its

indigency finding "at any time during the proceedings" if the court (1) "receives evidence of a material change in the person's income or assets" or (2) "the person has failed to provide the court with sufficient evidence, including documentary evidence, to sustain the court's initial indigency determination."

[8] As our Supreme Court recently explained, now that our legislature "firmed up the requirements for determining indigency," trial courts "must consider three distinct items—assets, income, and necessary expenses—that the legislature deems essential in calculating a defendant's ability to pay." *Spells*, 225 N.E.3d at 778 (citing I.C. § 35-33-7-6.5(a)). "[I]t is incumbent on trial courts to consider these factors," which "means that if the parties fail to provide the information, courts themselves must make inquiries calculated to bring out the necessary evidence." *Id.* Indeed, "the right to counsel is a fundamental constitutional right[.]" *Shively v. State*, 912 N.E.2d 427, 431 (Ind. Ct. App. 2009). Our caselaw establishes that, if the trial court failed to make an adequate inquiry into whether the criminal defendant was indigent, reversal is necessary. *Id.* (reversing a conviction due to an inadequate indigency determination under the prior standard from the common law); *see also Spells*, 225 N.E.3d at 779 (vacating the imposition of a fine, costs, and fees, and remanding for further proceedings because the "indigency determination was incomplete"). When the record contains evidence "demonstrating an inability to pay," the burden "shifts to the State to rebut the evidence." *Spells*, 225 N.E.3d at 778 (quoting *Bell v. State*, 59 N.E.3d 959, 964 (Ind. 2016)). So long as "the record discloses a reasonable inquiry into the mandatory factors as they pertain to the defendant's

ability to pay," we "defer to the sound discretion of the trial court" in weighing those factors. *Id.* at 779. However, we reverse if (1) "one of the mandatory factors . . . is passed over"—"especially . . . the defendant's income or necessary expenses"—or (2) the trial court's inquiry was "unreasonably superficial[.]" *Id.*

Here, the trial court elicited evidence about Maze's assets and income, learning that Maze initially had access to around $3,000.00 in savings, was unemployed and currently without income, and might be able to re-enter the workforce. Yet, there was inadequate inquiry into Maze's necessary expenses, particularly in light of evidence he needed the money to support himself and a dependent. Based on the record presented, we agree with the parties that the conviction must be reversed because the trial court denied Maze's request for appointed counsel without adequate inquiry into whether Maze was, in fact, indigent. Under the circumstances, we reverse and remand for further proceedings.[3]

Reversed and remanded.

Mathias, J. and Felix, J., concur.

---

[3] At the sentencing hearing, the trial court found Maze indigent for purposes of appeal. We note that the subsequent indigency determination generally controls, unless revisited in accordance with Indiana Code chapter 35-33-7. *Cf. Shively v. State*, 912 N.E.2d 427, 432 (Ind. Ct. App. 2009) (reversing and remanding under similar circumstances, noting the defendant "was found indigent after trial" and, unless there was contrary evidence, "should be considered to still be so for purposes of further proceedings on remand").

ATTORNEY FOR APPELLANT

Ruth Johnson
Freetown, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana